IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          )
                                )     Case No. 06-10834 (BLS)
CELINE ARTIE WILSON,            )
                                )     Chapter 7
                  Debtor.       )

## MEMORANDUM OPINION[1]

Before the Court is the Motion of the United States Trustee ("UST") to Dismiss the chapter 7 case of Celine Artie Wilson (the "Debtor") pursuant to 11 U.S.C. § 707(b)(2) or, alternatively, pursuant to 11 U.S.C. § 707(b)(3) (the "Motion to Dismiss"). Following the November 16, 2006 hearing on the Motion to Dismiss, only one discrete issue with regard to the UST's request for dismissal under section 707(b)(2) remains: namely, whether the Debtor, for purposes of section 707(b)(2)(A)(ii)(I), may take the transportation-ownership expense deduction specified under the Internal Revenue Service ("IRS") Local Standards for a car she owns free and clear of liens.

For the reasons stated below, the Court concludes that the Debtor may take the deduction.

## BACKGROUND

On August 8, 2006, the Debtor commenced the above-captioned case (the "Case"), seeking protection under chapter 7 of the

---

[1]  This Opinion constitutes the findings of facts and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

Bankruptcy Code (the "Code").  Along with her voluntary petition, the Debtor filed her Schedules, Statement of Financial Affairs, and Statement of Current Monthly Income and Means Test Calculation ("Form B22A").

On October 23, 2006, the UST filed its Motion to Dismiss arguing that, inter alia:  (1) although the Debtor's Form B22A demonstrated that the Debtor did not have sufficient net monthly income for the presumption of abuse to arise under section 707(b)(2), the presumption in fact did arise due to an improper deduction of the transportation-ownership expense, as an "applicable monthly expense amount" specified under the IRS Local Standards, where the Debtor owned her vehicle free and clear of liens; and (2) even if the Court found the deduction proper, dismissal of the Case under section 707(b)(3) was appropriate because the totality of the circumstances indicate the Debtor's ability to fund a chapter 13 plan.

On November 8 and, again, on November 16, 2006, the Debtor amended her Schedule I, Schedule J, and Form B22A.  On November 9, 2006, she objected to the Motion to Dismiss, arguing that, inter alia:  (1) Chief Judge Walrath's recent opinion in In re Fowler, 349 B.R. 414 (Bankr. D. Del. 2006), permitted her to deduct the transportation-ownership expense, as an "applicable monthly expense amount", even though she owns her vehicle free and clear of liens; and (2) even if this Court held the deduction

2

improper, she did not have excess income with which to fund a chapter 13 plan due to changes in her financial condition following the filing of her voluntary petition.

A hearing was held on November 16, 2006, at which time the parties advised the Court that, although there were other minor disputes regarding the Debtor's claimed expenses, there would be no presumption of abuse under section 707(b)(2) if the Court determines that the Debtor may take the deduction for ownership of her car.  Additionally, counsel for the UST requested additional time for discovery and a further evidentiary hearing regarding section 707(b)(3) if the Court permits the Debtor to take the deduction.

This matter is ripe for decision.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (O).

## DISCUSSION

Dismissal of a chapter 7 case is governed by section 707, which was substantially modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[2] Pursuant to section 707(b)(1), the Court, after notice and a

---

[2]    Pub. L. No. 109-8, 119 Stat. 23 (2005).

hearing, "may dismiss a case filed by an individual debtor under [chapter 7] whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of [chapter 7]."  To determine whether the granting of relief would be an abuse, the Court is guided by the "means test" of BAPCPA, established by section 707(b)(2)(A)(i).  According to section 707(b)(2)(A)(i), "the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of . . . 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or . . . $10,000."

For purposes of this test, a debtor's current monthly income, as defined under section 101(10A), is:

> the average monthly income from all sources
> that the debtor receives (or in a joint case
> the debtor and the debtor's spouse receive)
> without regard to whether such income is
> taxable income, derived during the 6-month
> period ending on . . . the last day of the
> calendar month immediately preceding the date
> of the commencement of the case if the debtor
> files the schedule of current income required
> by section 521(a)(1)(B)(ii) . . . or . . .
> the date on which current income is
> determined by the court for purposes of
> [chapter 7] if the debtor does not file the
> schedule of current income required by
> section 521(a)(1)(B)(ii) . . . .

From this amount, certain expenses must be subtracted. Pursuant to section 707(b)(2)(A)(ii), a debtor is entitled to

4

deduct the "applicable monthly expense amounts specified under the National Standards and Local Standards . . . issued by the [IRS] for the area in which the debtor resides . . . ." The National Standards establish presumptively reasonable amounts for five necessary expenses: food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. These amounts vary based upon a debtor's gross income level and family size. The Local Standards establish presumptively reasonable amounts for two necessary expenses: transportation and housing. The local housing standard includes expenses for housing and utilities, and the local transportation standard includes expenses for ownership and operation. The Local Standards vary depending upon the area of the country in which a debtor resides, a debtor's family size, and the number of vehicles owned by a debtor.

In addition to expense amounts specified under the National and Local Standards, in some instances, a debtor may deduct actual expenses. 11 U.S.C. § 707(b)(2)(A)(ii). Finally, a debtor is permitted to deduct average monthly payments for secured debts and priority claims. 11 U.S.C. § 707(b)(2)(A)(iii)-(iv).

If, after performing the means test calculations, the presumption of abuse arises, the Court has no discretion and must dismiss the chapter 7 case unless a debtor is able to rebut the

presumption pursuant to section 707(b)(2)(B).  Under this section, a debtor may rebut the presumption "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of [the debtor's] current monthly income for which there is no reasonable alternative."  11 U.S.C. § 707(b)(2)(B).

If the presumption of abuse does not arise under the means test or if a debtor successfully rebuts the presumption, a debtor's chapter 7 case still may be dismissed if "the debtor filed the petition in bad faith . . . or . . . [if] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."  11 U.S.C. § 707(b)(3) (emphasis added).

The Congressional intent behind the BAPCPA modifications to section 707(b) is clear.  In amending section 707(b), Congress sought to remedy perceived abuses that occur when consumer debtors received "a full discharge under Chapter 7 when they had regular income that could be used to repay some portion of their unsecured debt in a Chapter 13 plan."  In re Singletary, No. 06-30339, 2006 WL 2987945, at *1 (Bankr. S.D. Tex. Oct. 19, 2006); accord In re Harshaw, 345 B.R. 518, 522 (Bankr. W.D. Pa. 2006); In re Savoie, No. 05-13263, 2005 WL 2476268, at *2 (Bankr. E.D. Pa. Oct. 6, 2005).  As President George W. Bush explained at the signing ceremony for BAPCPA:

> In recent years, too many people have abused
> the bankruptcy laws.  They've walked away
> from debts even when they had the ability to
> repay them.  This has made credit less
> affordable and less accessible, especially
> for low-income workers who already face
> financial obstacles.
>
> The bill I sign today helps address this
> problem.  Under the new law, Americans who
> have the ability to pay will be required to
> pay back at least a portion of their debts.
> . . .  This practical reform will help ensure
> that debtors make a good-faith effort to
> repay as much as they can afford.

In re Richie, No. 06-20188, 2006 WL 3019209, at *11 (Bankr. E.D.
Wis. 2006 Oct. 3, 2006) (quoting Press Release, White House Press
Office, President Signs Bankruptcy Abuse Prevention, Consumer
Protection Act (Apr. 20, 2005), available at http://www.white
house.gov/news/releases/2005/04/20050420-5.html).  One method
Congress developed to achieve this purpose is the means test,
described as a "blind legislative formula that attempts to direct
debtors to a chapter that provides for at least some measure of
repayment to unsecured creditors over a period of years."  In re
Barraza, 346 B.R. 724, 729 (Bankr. N.D. Tex. 2006).

    While the legislative purpose behind the modifications to
section 707(b) is easy to discern, courts have struggled with its
application.  Indeed, the discrete and rather arcane issue
currently before the Court - concerning allowances for vehicle
expenses - has given rise to no fewer than ten written opinions
from Bankruptcy Courts around the country over the past eight

months.  In the present case, at issue is the proper
interpretation of section 707(b)(2)(A)(ii), which permits the
deduction of the "applicable monthly expense amounts specified
under the National Standards and Local Standards . . . issued by
the [IRS] for the area in which the debtor resides . . . ."  More
specifically, this Court must determine whether the Debtor may
take the transportation-ownership expense deduction specified
under the IRS Local Standards for a car she owns free and clear
of liens.

The Court's examination of the existing case law has
revealed a split in authority.[3]  A majority of the courts,
beginning with In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex.
2006), has denied a transportation-ownership expense deduction
where the debtor owns a car free and clear of liens.  See, e.g.,
In re McGuire, 342 B.R. 608 (Bankr. W.D. Mo. 2006); Barraza, 346
B.R. at 727-29; In re Carlin, 348 B.R. 795 (Bankr. D. Or. 2006);
In re Wiggs, No. 06-B-70203, 2006 WL 2246432 (Bankr. N.D. Ill.
Aug. 4, 2006); In re Oliver, No. 06-10134, 2006 WL 2468297
(Bankr. W.D. Tex. Aug. 8, 2006); In re Harris, No. 05-87033, 2006
WL 2933891 (Bankr. E.D. Okla. Oct. 13, 2006).  The majority looks
to the plain language of section 707(b)(2)(A)(ii) for support:

> [T]he statute provides that a "debtor's

---

[3]    The arguments presented to the Court by the UST and the
Debtor mirror the arguments presented by the majority and
minority approaches, respectively.

monthly expenses shall be the debtor's
<u>applicable</u> monthly expense amounts" under the
Standards.  If a debtor does not own or lease
a vehicle, the ownership expense is not
"applicable" to that debtor.  Thus, if a
debtor is not incurring expenses for the
purchase or lease of a vehicle, the debtor
cannot claim a vehicle ownership expense
under the IRS Standards.

<u>McGuire</u>, 342 B.R. at 613; <u>accord</u> <u>Carlin</u>, 348 B.R. at 798; <u>Harris</u>,

2006 WL 2933891, at **3-4.

For further support, the majority cites to the language of

the IRS's Internal Revenue Manual ("IRM") as well as the IRS's

Collection Financial Standards ("CFS"), both of which provide

instructions for analyzing a taxpayer's financial condition.

They instruct:  "If a taxpayer has a car payment, the allowable

ownership cost added to the allowable operating cost equals the

allowable transportation expense.  <u>If a taxpayer has no car</u>

<u>payment only the operating cost portion of the transportation</u>

<u>standard is used</u> to figure the allowable transportation expense."

INTERNAL REVENUE SERVICE, INTERNAL REVENUE MANUAL, FINANCIAL ANALYSIS

HANDBOOK, pt. 5, ch. 15, § 1.7.4.B. (May 1, 2004), <u>available at</u>

http://www.irs.gov/irm/ (emphasis added) [hereinafter IRM];

<u>accord</u> INTERNAL REVENUE SERVICE, COLLECTION FINANCIAL STANDARDS, <u>available</u>

<u>at</u> http://www.irs.gov/individuals/article/0,,id= 96543,00.html

(last visited Nov. 29, 2006).

Finally, to defend against the argument that the denial of

such deduction causes a disparate impact and an absurd result by

rewarding those who can afford to finance vehicles while punishing those most impoverished, cases in the majority line put forth several arguments, including:  (1) the lack of a debtor's constitutional right to file a chapter 7 voluntary petition; (2) the ability of a debtor to amend a chapter 13 plan if he or she finances a vehicle or must pay for vehicle repairs; (3) the existence of a transportation-operating expense deduction for those debtors who own a vehicle free and clear of liens; (4) the ability of a debtor to overcome the presumption of abuse by showing special circumstances; and (5) the apparent Congressional conclusion that debtors who own vehicles free and clear of liens have a greater ability to commit funds to repay their creditors. See McGuire, 342 B.R. at 612-14; Barraza, 346 B.R. at 728-30; Carlin, 348 B.R. at 798; Wiggs, 2006 WL 2246432, at *2; Harris, 2006 WL 2933891, at **3-7.

The minority approach, led by Fowler and followed by In re Hartwick, No. 06-31241, 2006 WL 2938700 (Bankr. D. Minn. Oct. 13, 2006) and In re Haley, No. 06-10775, 2006 WL 2987947 (Bankr. D.N.H. Oct. 18, 2006), also emphasizes the plain language of section 707(b)(2)(A)(ii) in support of its decision to allow the transportation-ownership expense deduction:  "Congress expressly stated that a debtor would be entitled to 'actual monthly expenses' for Other Necessary Expenses.  The use of 'actual' with respect to Other Necessary Expenses and 'applicable' with respect

to the National and Local Standards must mean that Congress
intended two different applications." Fowler, 349 B.R. at 418.
According to the court in Haley, "whether an expense is
'applicable' depends on the number of vehicles owned or leased by
the debtor  . . . . [and] where a debtor resides . . . ." 2006
WL 2987947, at *3; see also In re Farrar-Johnson, No. 06-B-3089,
2006 WL 2662709, at *5 (Bankr. N.D. Ill. Sept. 15, 2006)
(reasoning the same and concluding that debtors with no actual
housing expense could take the "applicable" housing expense
deduction under the Local Standards).

The minority approach also finds it inappropriate to rely on
the IRM and CFS instructions.  As explained in Fowler and its
progeny, the IRS and the Code apply the Local Standards
differently.  The IRS uses the Local Standards as a cap on
taxpayers' actual expenses, whereas section 707(b)(2)(A)(ii) uses
them as fixed allowances.  Compare IRM, pt. 5, ch. 15, § 1.7.4.
("Taxpayers will be allowed the local standard or the amount
actually paid, whichever is less."), with 11 U.S.C. §
707(b)(2)(A)(ii)(I) ("The debtor's monthly expenses shall be the
debtor's applicable monthly expense amounts specified under the
. . . Local Standards . . . .").  The conflicting application
supports the debtor's entitlement to the deduction and avoids
potentially unfair results that may stem from the majority
approach:

> This approach reflects the reality that a car
> for which the debtor no longer makes payments
> may soon need to be replaced (so that the
> debtor will actually have ownership
> expenses), and it avoids arbitrary
> distinctions between debtors who have only a
> few car payments left at the time of their
> bankruptcy filing and those who finished
> making their car payments just before the
> filing.

349 B.R. at 419.

Finally, in further support of its approach, the court in Fowler cited to legislative history and several policy considerations. Id. at 419-21. More specifically, it highlighted a prior draft version of section 707(b)(2)(A)(ii)(I), requiring the use of the "Internal Revenue Service financial analysis" when determining the expense deductions under the National and Local Standards, a requirement omitted from the statute as enacted. Id. at 419. The Court also relied upon Congress' intent to create uniformity in the means test's application and the UST's ability to utilize section 707(b)(3) to take a second bite at the apple if the presumption of abuse does not arise under the means test. Id. at 420-21.

In the instant case, the Court finds the reasoning set forth by the minority approach persuasive and thus will permit the Debtor to deduct the transportation-ownership expense for a car owned free and clear of liens. The Court's conclusion rests upon the plain language of section 707(b)(2)(A)(ii). First, section 707(b)(2)(A)(ii) provides that a debtor's allowable expense

deduction is the "applicable . . . <u>amounts</u> <u>specified</u> under the
. . . Local Standards . . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I)
(emphasis added).  It does not provide that a debtor's allowable
expense deduction is determined by the applicable IRS
instructions specified in the IRM and CFS.  <u>See</u> <u>Farrar-Johnson</u>,
2006 WL 2662709, at *5.

Second, like the courts in <u>Fowler</u> and <u>Haley</u>, the Court finds
it cannot ignore section 707(b)(2)(A)(ii)'s distinction between
four categories of allowable expense deductions, including:  (1)
"applicable monthly expense amounts specified under the National
and Local Standards[;]" and (2) "actual monthly expenses for
. . . Other Necessary Expenses . . . ."  The importance of this
distinction has been succinctly highlighted by the court in
<u>Farrar-Johnson</u>, which permitted debtors to deduct the Local
Standard housing expense notwithstanding that they lived in
military housing and had no "actual" housing expense:[4]

> Congress drew a distinction in the statute
> between "applicable" expenses on the one hand
> and "actual" expenses on the other.  "Other
> Necessary Expenses" must be the debtor's

---

[4]    At the November 16, 2006 hearing, the UST argued that
<u>Farrar-Johnson</u> was inapplicable to the instant case because the
IRM and CFS instructions regarding the Local Standard housing
expense differ from those of the transportation-ownership
expense.  More specifically, the IRM and CFS do not disallow a
housing expense deduction where a debtor either owns a home free
and clear of liens or incurs no actual housing expense.  However,
because the Court holds it inappropriate to rely on the IRM and
CFS instructions, it finds the <u>Farrar-Johnson</u> decision both
relevant and persuasive.

> "actual" expenses.  Expenses under the "Local
> Standards," in contrast, need only be those
> "applicable" to the debtor - because of where
> he lives and how large his household is.  It
> makes no difference whether he "actually" has
> them.

2006 WL 2662709, at *5.  Thus, based upon the clear statutory
language of section 707(b)(2)(A)(ii), a debtor's ability to
deduct the transportation-ownership expense depends merely upon
where he resides and how many vehicles he owns - not whether the
vehicle is subject to a lien.

Although the majority approach argues that the legislative
history of BAPCPA justifies its reliance on the IRM and CFS
instructions, this Court disagrees.  <u>McGuire</u>, 342 B.R. at 613
n.15 ("[T]he legislative history of BAPCPA specifically refers to
the IRS Financial Analysis Handbook as the basis for determining
expenses under [section] 707(b).").  To begin, since the
statutory language of section 707(b)(2)(A)(ii) is clear, well-
established canons of statutory construction preclude an
examination of the legislative history:

> [I]n interpreting a statute a court should
> always turn first to one, cardinal canon
> before all others.  We have stated time and
> again that courts must presume that a
> legislature says in a statute what it means
> and means in a statute what it says there.
> When the words of a statute are unambiguous,
> then, this first canon is also the last:
> "judicial inquiry is complete."

<u>Conn. Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992)
(quoting <u>Rubin v. United States</u>, 449 U.S. 424, 430 (1981)

(internal citations omitted)).

Moreover, even if this Court found the statute ambiguous, the legislative history merely tells the Court where to find the amounts specified under the Local Standards - in the Financial Analysis Handbook (the "FAH"). See IRM, pt. 5, ch. 15, ex. 5.15.1-2 (describing the internet location of the Allowable Expense Tables). It does not direct the Court to consider the instructions therein:

> In addition to other specified expenses, the debtor's monthly expenses - exclusive of any payments for debts (unless otherwise permitted) - must be the applicable monthly amounts set forth in the Internal Revenue Financial Analysis Handbook as Necessary Expenses under the National and Local Standard categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses.

H.R. Rep. No. 109-31(I), at 13-14 (2005), as reprinted in 2005 U.S.C.C.A.N. 88, 99-100 (emphasis added).

The Court's finding inappropriate the use of IRM and CFS instructions is buttressed also by two additional observations. First, as discussed above, the IRS uses the Local Standards as a cap on taxpayers' actual expenses whereas section 707(b)(2)(A)(ii)(I) uses the Local Standards as fixed deductions, a point highlighted in the Committee Note to Form B22A: "Each of the amounts specified in the Local Standards are treated by the IRS as a cap on actual expenses, but because [section] 707(b)(2)(A)(ii) provides for deductions in the 'amounts

specified under the . . . Local Standards,' the forms treat these amounts as allowed deductions."

Second, the Court notes that the IRS directs debtors, who are calculating expense amounts under the means test, away from its own guidelines and to the website of the UST. See IRM, pt. 5, ch. 15, ex. 5.15.1-2 (providing, "IRS Allowable Expenses are intended for use in calculating repayment of delinquent taxes. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program."). Upon accessing the means test information located on the UST's website, the Court merely found Allowable Expense Tables setting forth specific monetary amounts to be deducted by debtors as allowable expenses under the National and Local Standards. See DEP'T OF JUSTICE, U.S. TRUSTEE PROGRAM, IRS LOCAL TRANSPORTATION EXPENSE STANDARDS - NORTHEAST CENSUS REGION (CASES FILED ON AND AFTER OCTOBER 1, 2006) (Jan. 27, 2006), available at http://www.usdoj.gov/ust/eo/bapcpa/20061001/bci_data/IRS_Trans_Exp_Stds_NE.htm (stating that the allowable transportation-ownership expense deduction for a debtor who owns one car is $471). It did not contain the CFS or IRM instructions so heavily relied upon by the UST today. Rather, and consistent with the Court's holding today, these resources provide fixed amounts for insertion into the means test formula created under section 707(b)(2)(A)(i).

Finally, in addition to the clear statutory language of section 707(b)(2)(A)(ii), the purpose and function of the means test also supports this Court's allowance of a deduction for a transportation-ownership expense a debtor does not have.  As discussed above, the means test is a "blind legislative formula", Barraza, 346 B.R. at 729, serving to determine, under an objective standard, whether the Court must presume that a filing is abusive.  See Hartwick, 2006 WL 2938700, at * 2 ("The means test presents a backward looking litmus test performed using mathematical computations of arbitrary numbers, often having little to do with a particular debtor's actual circumstances and ability to pay a portion of debt.  Congress has already determined the fairness of application of the means test, and a major objective of the legislation was to remove judicial discretion from the process.").  There is no inconsistency or absurdity in this Court's application of that objective approach under section 707(b)(2) when, as noted, section 707(b)(3) expressly allows for this Court to perform a subjective analysis, upon the motion of the UST or upon its own, of a debtor's actual financial position in the event abuse is not presumed.  In sum, this Court finds that Congress has developed a two-step test to detect and deter abusive filers:  First, a standardized formula (where the Court has no discretion), and a second, case-by-case analysis designed to address what Congress expected would be the

inevitable exceptional cases.

Therefore, because the statutory language of section 707(b)(2)(A)(ii) makes it clear that a debtor's transportation-ownership deduction under the Local Standards depends merely upon where he resides and the number of vehicles owned, this Court holds that the deduction applies to debtors who own a vehicle free and clear of liens.

### CONCLUSION

For the foregoing reasons, the Court concludes that the Debtor may deduct the transportation-ownership expense deduction. As a result, no presumption of abuse arises under section 707(b)(2).  The Court will schedule a hearing to consider such evidence and argument as the parties may present on the issue of whether the Debtor's chapter 7 case should nonetheless be dismissed under section 707(b)(3).

An appropriate Order follows.

BY THE COURT:

Dated: Wilmington, Delaware
       December 11, 2006

Brendan Linehan Shannon
United States Bankruptcy Judge

18